UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES FREBES, <br> MICHAEL ARGEROPOULOS and <br> MARC HOCHMUTH, Individually, and <br> on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MASK RESTAURANTS, LLC, d/b/a TAVERN <br> AT THE PARK, PETER de CASTRO, JR., and <br> DONNY de CASTRO, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 13 C 3473 <br> Hon. Marvin E. Aspen |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Court Judge:

Plaintiffs James Frebes, Michael Argeropoulos, and Marc Hochmuth, individually, and on behalf of themselves and others similarly situated (hereinafter "Plaintiffs"), sue Defendants Mask Restaurants, LLC, d/b/a Tavern at the Park restaurant, Peter de Castro, Jr., and Donny de Castro (hereinafter "Defendants") for violations of Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Plaintiffs allege that they received an incorrect, sub-minimum wage rate due to Defendants' invalid use of a tip pool. (Compl. ¶¶ 49–51.) Specifically, Plaintiffs allege that tipped employees were required to pay a percentage of their tips to Defendants, who then distributed a portion of those tips to employees who did not regularly receive tips, in violation of the FLSA. (*Id*. ¶¶ 50–51.)

Plaintiffs have moved, pursuant to 29 U.S.C. § 216(b), to conditionally certify the suit as a collective action and to authorize their proposed class notice. (Dkt. No. 36.) Additionally,

1

Plaintiffs ask that we order Defendants to produce a computer-readable data file containing the names, addresses, telephone numbers, and email addresses of the FLSA class, and order the posting of notice at a location in Defendants' restaurant where members of the class are likely to view it. (Mem. at 13.) Finally, Plaintiffs seek authorization to send notice at their expense through U.S. First Class mail and to e-mail all members of the FLSA class "to inform them of their right to opt-in to the lawsuit." (Mem. at 14.) For the reasons discussed below, we grant the motion for class certification. We grant Plaintiffs' requests for proposed notice in part and deny them in part, for the reasons discussed below.

**BACKGROUND**

The named Plaintiffs and the persons they represent are tipped employees of Defendants who work or have worked as servers, bartenders, and bussers. (Mem. at Ex. J., Pls.' Proposed Notice.) They allege that Defendants failed to comply with tip-credit provisions of the FLSA and the Illinois Minimum Wage Law ("IMWL"). (Mem. at 2.) Plaintiffs allege that Defendants violated the FLSA, which allows employers of "tipped employees" to pay less than minimum wage if employers comply with the statute's tip-credit provision. 29 U.S.C. § 203(m). The FLSA authorizes a tipping pool if tips are distributed among employees who customarily receive tips. *Id.* Under the FLSA, "'[t]ipped employee' means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

Plaintiffs claim that Defendants violated the provisions by requiring their servers, bussers, and bartenders to participate in a tip pool that directed a portion of the tips to non-tipped employees, specifically, "food runners." (Compl. ¶ 2.) Plaintiffs allege that some of these food runners were merely "food expediters" who "performed all their duties in the kitchen and had no

customer interaction." (*Id.*) Plaintiffs plead that both "food runners" and what they consider "food expediters" do not qualify as tipped employees for satisfying the tipping pool requirements under the FLSA and IMWL. (*Id.*)

## I. CONDITIONAL CERTIFICATION

Plaintiffs move for conditional class certification and for court-facilitated notice to potential class members pursuant to 29 U.S.C. § 216(b), on behalf of all servers, bartenders, and bussers employed by Defendants from May 9, 2010 to the present date.[1] (Mem. at 13.) According to Defendants, we should not certify the class because Plaintiffs are not sufficiently similarly situated.

### A. Legal Standard

We first consider whether Plaintiffs are similarly situated for the purposes of certifying a collective action. "Courts in this district have adopted a two-step process for determining whether an FLSA suit should proceed as a collective action." *Cramer v. Bank of Am., N.A.*, No. 12 C 8681, 2013 WL 6507866, at *1 (N.D. Ill. Dec. 12, 2013) (citing *Kelly v. Bank of Am.*, No. 10 C 5332, 2011 WL 4526674, at *2 (N.D. Ill. Aug. 30, 2011); *Betancourt v. Maxim Healthcare Servs., Inc.*, No. 10 C 4763. 2011 WL 1548964, at *4 (N.D. Ill. Apr. 21, 2011)). The first step requires a group of plaintiffs to make a modest factual showing that the members of the class are similarly situated, and that they were "injured by a common policy or plan that violated the law." *Cramer*, 2013 WL 6507866, at *1; *Betancourt*, 2011 WL 1548964, at *4. This showing is a lenient standard. *Cramer*, 2013 WL 6507866, at *1. "Plaintiffs do not have to

---

[1] Plaintiffs also plead claims under the IMWL, 820 ILCS 105/1, *et seq.*, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* Since Plaintiffs have not moved for class certification for their state claims, we consider certification under the federal FLSA standards only. *See Jankuski v. Heath Consultants, Inc.*, No. 12 C 4549, 2012 WL 6055596, at *2 n.2 (N.D. Ill. Dec. 5, 2012).

show that the potential class members have *identical* positions for conditional certification to be granted," and Plaintiffs can have different "job titles, functions, or pay" yet still be similarly situated. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848–49 (N.D. Ill. 2008) (emphasis in original).

Because the "similarly situated" standard is liberal, it "typically results in conditional certification of a representative class." *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010) (quoting *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003)); *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 752 n.4 (N.D. Ill. 2010). At the second step, after discovery, the court's inquiry becomes more stringent. At that point, the court will reevaluate the class and determine whether it should "proceed to trial on a collective basis." *Cramer*, 2013 WL 6507866, at *2.

"'Although the inquiry is undemanding, the court is under no obligation, as it would be on a motion to dismiss, to accept the plaintiff's allegations as true.'" *Rottman*, 735 F. Supp. 2d at 990 (quoting *Hundt v. DirectSat USA, LLC*, No. 08 C 7238, 2010 WL 2079585, at *2 (N.D. Ill. May 24, 2010)). With these standards in mind, we now turn to the record before us, including Defendants' and Plaintiffs' briefs and exhibits. *Rottman*, 735 F. Supp 2d at 990; *Hundt*, 2010 WL 2079585, at *2.

**B. Analysis**

Here, Plaintiffs seek to be conditionally certified as a class of regularly tipped employees consisting of bartenders, bussers, and servers employed by Defendants from May 9, 2010 to the present. (Mem. at 3.) Plaintiffs assert that they are part of a similarly situated class in that they are "required to participate in a mandatory, involuntary, and invalid tip pool, whereby servers, bartenders and bussers must pay a percentage of their tips to Defendants." (*Id*. at 6.) Plaintiffs

4

allege that Defendants then distributed "that portion of their tips to various employees, including employees titled 'food runners,' who do not customarily and regularly receive tips." (*Id*. at 6–7.)

Defendants argue that Plaintiffs are not similarly situated because they have different job duties and responsibilities. (Resp. at 6.) They also contend that Plaintiffs are not similarly situated because they have different pay rates and have different contributions to the tip pool depending on whether they are servers, bussers, or bartenders. (*Id*. at 7–8.)

As indicated above, Plaintiffs need only make a "'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Rottman*, 735 F. Supp. 2d at 991 (quoting *Smallwood*, 710 F. Supp. 2d at 750). As the *Jirak* court explains, arguments about dissimilarities in the class are more appropriate for step two of this process after discovery, rather than at this initial certification stage. 566 F. Supp. 2d at 850. At this initial certification stage, "plaintiffs need not show that potential class members have identical positions. Rather, 'plaintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay.'" *Rottman*, 735 F. Supp. 2d at 992 (quoting *Jirak,* 566 F. Supp. 2d at 848–49).

In *Ervin v. OS Restaurant Services, Inc.*, for example, the trial court certified a class of tipped employees who were forced to perform non-tipped tasks. No. 08 C 1091, 2009 WL 1904544 (N.D. Ill. July 1, 2009) *rev'd on other grounds*, 632 F.3d 971 (7th Cir. 2011). In *Clark v. Honey-Jam Café*, *LLC*, all tipped employees receiving a sub-minimum wage were a class, including servers and bussers. No. 11 C 3842, 2013 WL 1789519, at *2 (N.D. Ill. Mar. 21, 2013). There, the *Clark* court was neither concerned with the possibility of individualized

5

questions of damages, nor persuaded that the class was unidentifiable or overbroad.[2] Another court in this district has also held that bartenders, servers, and bussers were part of a conditional class when subjected to an allegedly illegal tip pool scheme. *Arango, et al. v. Landry's Inc, et al.*, No. 12 C 9354 (N.D. Ill. May 7, 2013) (unpublished op.).

Accordingly, for present purposes, Plaintiffs are a class of tipped employees who allege they have been subjected to a common plan of forced distribution of a portion of their tips to non-tipped employees in violation of the FLSA. As in *Clark*, where tipped employees made up a class subjected to a common plan of being forced into non-tipped work, Plaintiffs are also similarly situated. Because Plaintiffs need only make a modest factual showing, we find any distinctions about the differing job titles Plaintiffs have or had are insignificant at this stage of litigation.

## II. NOTICE

Along with their motion for certification, Plaintiffs submitted proposed language for a notice to class members. Defendants objected to numerous aspects of the proposed notice in their opposition brief, and Plaintiffs subsequently suggested certain revisions in their reply brief. We consider Plaintiffs' proposals, as well as Defendants' objections, below.

### A. No Equitable Tolling

As a threshold question, Defendants urge that, even if we find similarity for the purposes of certification, we should equitably toll the limitations period and hold off on conditional certification and/or issuance of a notice to allow the parties to first engage in limited discovery. (Resp. at 8.) In support of this position, Defendants cite *Bergman v. Kindred Healthcare, Inc.*,

---

[2] Although the analysis in that case pertained to class certification under Rule 23, the court held that when a class satisfied commonality under Rule 23, it also satisfied the similarly-situated standard for conditional certification motions under the FLSA. *Clark,* 2013 WL 1789519, at *3 (citing *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013)).

949 F. Supp. 2d 852, 860 (N.D. Ill. 2013). The court in *Bergman* allowed for certification but granted equitable tolling of the limitations period because it required extra time to review plaintiffs' briefs. *Id.* We are not presented with such a situation here, however, and Defendants' reliance on *Bergman* is misplaced. We need not delay either conditional certification or issuance of a class notice.

### B. Statute of Limitations

Turning to the language of the notice of the collective action lawsuit, Defendants contend that the notice should reflect a two-year statute of limitations, while Plaintiffs' proposed notice covers three years. (Resp. at 9.) "The statute of limitations for FLSA violations is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" *Adams v. United States*, 350 F.3d 1216, 1229 (Fed. Cir. 2003) (quoting 29 U.S.C. § 255 (1994)). "An FLSA violation is 'willful' if the defendant either knows he is committing or is reckless about whether he is committing a violation." *Sylvester v. Wintrust Fin. Corp.*, No. 12 C 1899, 2013 WL 5433593, at *5 (N.D. Ill. Sept. 30, 2013) (quoting *EEOC v. Madison Cmty. Unit Sch. Dist. No. 12*, 818 F.2d 577, 585 (7th Cir. 1987)). Defendants contend that Plaintiffs have not alleged willfulness.

Plaintiffs counter that a conclusory willfulness allegation is sufficient to warrant notice covering three years to proposed class members. *Sylvester,* 2013 WL 5433593, at *5 (citing *Gambrell v. Weber Carpet, Inc.,* No. 10 C 2131, 2010 WL 5288173, *2 (D. Kan. Dec. 17, 2010) (finding that one conclusory allegation of willfulness was enough to warrant such notice)); *North v. Bd. of Trs. of Ill. State Univ.,* 676 F. Supp. 2d 690, 696 n.8 (C.D. Ill. 2009) (declaring that courts can assume willfulness at the notice stage). Here, Plaintiffs expressly allege willfulness twice in their complaint. (Compl. ¶¶ 62, 74.) They also describe the alleged violation as

7

"willful" in their motion for conditional certification. (Mem. at 1.) Accordingly, because there is not a high bar for giving notice under the three-year statute of limitations, we will apply a three-year statute of limitations at this stage in the litigation.

### C. Notice Document and Formatting

We turn to the parties' disputes about the language and formatting of the notice itself, which we address briefly. We begin with Defendants' contention that "the notice should state that the court has not made any determination on the merits." (Resp. at 9.) Plaintiffs have agreed with this request, and also have agreed to remove references to overtime. (Reply at 7.)

Defendants request that the notice contain defense counsel's contact information. (Resp. at 10.) In *Gambo v. Lucent Technologies*, the court denied such a request, holding that "there is no basis in law or fact" to support the demand. No. 05 C 3701, 2005 WL 3542485, at *7 (N.D. Ill. Dec. 22, 2005); *see also Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 436 (S.D. Ill. 2012) ("A notice does not need to include defense counsel's contact information."). Although Defendants cite a case from another jurisdiction that requires defense contact information, *Bah v. Shoe Mania, Inc.*, 08 C 9380, 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009), we will follow the precedent of this district and will not require it.

Defendants object to Plaintiffs' proposed notice language and urge that they should be allowed to state their position "on the legal merits of this action in greater specificity." (Resp. at 10.) In their reply, Plaintiffs agree to include a "brief statement on Defendants' purported defense," so long as the description is not misleading. (Reply at 9.) Neither party cites any law to justify its position. We order Plaintiffs to confer with Defendants and draft mutually-acceptable language that addresses these issues and complies with this order. Plaintiffs are

8

directed to file the revised notice on the docket by May 30, 2014. *See Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *10 (N.D. Ill. Jan. 20, 2009).

### D. Opt-In Period: Sixty Days

Turning to the notice period, Plaintiffs propose sixty days during which potential class members may opt-in. (Mem. at 13.) Defendants find this term to be "excessive and overbroad." (Resp. at 11.) They instead contend that a "45-day opt-in period is sufficient." (Resp. at 11.) In *Smallwood*, the court decided that sixty days was appropriate where plaintiffs had argued, as here, that less time would present conflicts with returned mail and the postal service. 710 F. Supp. 2d at 753. (Reply at 9.) Consistent with precedent in this district, we will allow sixty days for notice and opt-in. *Rottman*, 735 F. Supp. 2d at 994 (ninety days); *Smallwood*, 710 F. Supp. 2d at 753 (sixty days); *Anyere v. Wells Fargo, Co., Inc.*, No. 09 C 2769, 2010 WL 1542180, at *4 (N.D. Ill. Apr. 12, 2010) (120 days).

### E. Warnings to Opt-in Plaintiffs

Defendants ask that the notice include language providing that those joining the suit "may be required to (1) sit for a deposition, (2) respond to written discovery, (3) testify at trial, and (4) pay costs if Plaintiffs do not prevail." (Resp. at 11.) Plaintiffs reply that there is no reason to include these provisions, given the large number of class members likely to be involved. (Reply at 9–10.) Plaintiffs could "easily number in the hundreds." (*Id.* at 10.) Plaintiffs also contend that the potential "opt-in Plaintiffs might incorrectly conclude there is more than a remote chance of having to pay Defendants' costs." (*Id.*)

First, considering the first three requests, courts have come out differently on these questions. In *Garcia v. Elite Labor Service., Ltd.*, for instance, the court did not find it necessary to inform opt-in plaintiffs that they may have to sit for deposition, respond to written discovery,

9

or testify, given the apparently large number of plaintiffs in that case. No. 95 C 2341, 1996 WL 33500122, at *4 (N.D. Ill. July 11, 1996) (noting that "this language could be found to be intimidating to the potential members of the class and given the fact that the class could exceed 1000 individuals, it is unlikely that most members will be deposed or testify in court"); *see also Wynn v. Express, LLC*, No. 11 C 4588, 2012 WL 874559, at *6 (N.D. Ill. Mar. 14, 2012) ("A warning that opt-in plaintiffs may be required to provide information, sit for depositions, and testify in court is not necessary in this case, as there are likely to be several thousand plaintiffs and the possibility that any one of them will testify or sit for a deposition is slim.")

On the other hand, in *Blakes v. Illinois Bell Telephone Company*, No. 11 C 336, 2011 WL 2446598, at *9 (N.D. Ill. June 15, 2011), the court ordered such language even though the plaintiffs asserted that the class was as big as fifteen hundred members. "Plaintiffs must add the following sentence to the revised proposed notice: 'While the suit is proceeding, you may be required to provide information, have your deposition taken, and testify in court.'" *Id.* at *2.

Although we recognize that there have been differing decisions on this matter, cases in this district have commonly allowed warning language for the notice. *See id.* at *9. In *Petersen v. Marsh USA, Inc.,* where the class numbered over four hundred members, the court required language in the notice providing that "[w]hile the suit is proceeding, you may be required to provide information, have your deposition taken, and testify in court." No. 10 C 1506, 2010 WL 5423734, at *6 (N.D. Ill. Dec. 23, 2010). Defendants also cite a decision allowing very similar language in the opt-in form. *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 939 (N.D. Ill. 2008) ("Russell [plaintiff] does not object to such language but ask [sic] that it be 'included in a reasonable location and manner.'").

10

Plaintiffs here plead that the class could "easily number in the hundreds," but we fail to see how the class could be so large such that we could label "remote" the chances of each opt-in Plaintiff having to actively participate in the trial. Here, the alleged violations occurred in just one restaurant, and the class is limited to tipped employees since May 9, 2010. (Mem. at 1.) We also think it would be useful, as practical matter, for opt-in Plaintiffs to understand their role in the litigation process. Accordingly, we conclude that the notice should include language stating, "While the suit is proceeding, you may be required to provide information, have your deposition taken, and testify in court." *See Blakes*, 2011 WL 2446598, at *9.

As to Defendants' fourth request, for a warning about the possibility of Plaintiffs paying litigation costs, Plaintiffs have indicated in the proposed notice that their attorneys will be paid on a contingent fee basis. (Mem. at Ex. J.) Therefore, we conclude that Plaintiffs do not need to warn opt-in Plaintiffs about possibly needing to pay Plaintiffs' attorneys out of pocket.

We next consider whether Plaintiffs should insert the warning about litigation costs because Plaintiffs may have to pay Defendants' attorneys fees. Defendants cite one case, *Bah*, 2009 WL 1357223, at *4, that supports inclusion of such a warning. Plaintiffs reply that they should not have to provide such language because the chance of Plaintiffs being required to pay Defendants' costs is remote. (Reply at 10.) We are persuaded to reject Defendants' position because the "possibility of imposition of attorney's fees on plaintiffs in an FLSA action is not broad enough to be necessary to the court-ordered notice." *Pomareda v. Homebridge Mortg. Bankers Corp.*, No. 06-61864, 2007 WL 624331, at *3 (S.D. Fla. Feb. 23, 2007) (citing *Bell v. Mynt Entm't, LLC,* 223 F.R.D. 680, 683 (S.D. Fla. 2004) and noting that the court would need to find bad faith before ordering plaintiffs to pay defendants' fees). We agree with Plaintiffs that

11

discussing the remote possibility of Plaintiffs paying Defendants' fees could prejudice potential opt-in plaintiffs and inappropriately dissuade them from joining the suit.

### F. Style and Font of the Notice Form

Defendants also object to the use of what they call "font effects to draw potential class plaintiffs' attention to plaintiffs' counsel and their position." (Resp. at 12.) Defendants contend that Plaintiffs use a larger font that is bold and underlined to "highlight the language that promotes joining the lawsuit." (*Id.*) Looking at the proposed notice from Plaintiffs' original motion, we do not find any unreasonable font effects, and the entire text seems to be uniform in size. (Mem. at Ex. J.) The headings are underlined, but there are six of them and they are equally capitalized. No text under the headings appears enhanced. We will allow this style, which seems legally and factually appropriate.

### G. Mail to Plaintiffs' Counsel

Additionally, Defendants object to opt-in Plaintiffs mailing their completed consent forms to Plaintiffs' counsel, rather than to us. (Resp. at 13.) Although Defendants urge that "courts regularly reject this procedure," it has been upheld in this district. *Smith v. C.H. James Rest. Holdings, L.L.C.*, No. 11 C 5545, 2012 WL 1144617, at *5 (N.D. Ill. Apr. 5, 2012) (stating that "it is a common practice to have such notices sent to the representative plaintiff's counsel and then have them electronically filed with the Clerk of Court"); *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 766 (N.D. Ill. 2011).

Defendants also ask that a third-party administrator distribute the notice of the claims to the opt-in plaintiffs. (Resp. at 13.) In this district, however, courts have rejected such requests. *Brand v. Comcast Corp.*, No. 12 C 1122, 2012 WL 4482124, at *9 (N.D. Ill. Sept. 26, 2012);

*Anyere*, 2010 WL 1542180, at *4. Accordingly, we do not see the need for an administrator, and we will allow the opt-in Plaintiffs to send their forms to Plaintiffs' counsel.

**H.     Posting Notice**

Plaintiffs request that we allow them to post notice inside the Tavern at the Park restaurant, where members of the class would be likely to view it. (Mem. at 3.) Defendants object because First Class mail to the class would be sufficient. (Resp. at 14.) Defendants also claim that doing so would create a "substantial and unnecessary business interruption," although they do not elaborate on how a posted notice would substantially interrupt business. In *Garcia v. Salamanca Group., Ltd.*, No. 07 C 4665, 2008 WL 818532, at *5 (N.D. Ill. Mar. 24, 2008), the court found that posting at the restaurant would be appropriate. We concur with this approach and will allow Plaintiffs to post notice so that it is in a visible place for conditional class members to view.

**I.     Information on the Class**

Plaintiffs also request the names, addresses, phone numbers, and email addresses of the FLSA class on a computer-readable file. (Mem. at 3.) Defendants object to providing the phone numbers and email addresses. (Resp. at 15.) Information about opt-in plaintiffs, beyond names and addresses, may be withheld to protect the opt-in plaintiffs' privacy rights. *Howard*, 2009 WL 140126, at *9. In *Alexander v. Caraustar Industries, Inc.*, the court denied plaintiffs' request for the members' email addresses in light of concerns that any notice could be modified and redistributed. No. 11 C 1007, 2011 WL 2550830, at * 3 (N.D. Ill. June 27, 2011). The court also denied requests for phone numbers. 2011 WL 2550830, at * 3; *see also Brand*, 2012 WL 4482124, at *9 ("While email addresses and phone numbers are not as sensitive as social security numbers, the court finds that this information is not critical to issuing notification of this

13

lawsuit."); *but see Nehmelman*, 822 F. Supp. 2d at 767 (ordering defendants to provide names, addresses, email addresses, and telephone numbers).

Here, because Plaintiffs have not made a showing why email addresses and telephone numbers are essential, we will order Defendants to provide only names and mailing addresses on the computer-readable data file. Plaintiffs state that they need this extra information "to attempt to locate and provide notice to putative class members for whom they receive returned mail." (Reply at 13.) For now, the sixty day opt-in period should be ample time for counsel and the Post Office to find the class.

## CONCLUSION

As set forth above, we find that the tipped employees, bussers, servers, and bartenders, constitute a conditional FLSA class. We order Defendants to provide to Plaintiffs' counsel the names and addresses of all employees in that class since May 9, 2010 by May 20, 2014 on a computer readable file. Defendants and Plaintiffs must confer to insert language on the Defendants' position and reach agreement by May 30, 2014. On or by May 30, 2014, Plaintiffs will file their final agreed notice on the docket. Once the final agreed notice has been filed, Plaintiffs shall provide notice to potential class members by U.S. Mail. They will also post notice at the Tavern at the Park Restaurant. All potential Plaintiffs have until August 4, 2014 to opt-in to the class. This case is set for a status call on August 14, 2014 at 10:30 a.m. It is so ordered.

                                                              Marvin E. Aspen
                                                               United States District Judge

Dated:        Chicago, Illinois
                 May 8, 2014