IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES FREBES,<br>MICHAEL ARGEROPOULOS and<br>MARC HOCHMUTH, Individually, and on<br>Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br><br>    v.<br><br>MASK RESTAURANTS, LLC, d/b/a<br>TAVERN AT THE PARK, PETER de<br>CASTRO, JR. and DONNY de CASTRO,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 13-cv-3473<br><br>Honorable Judge<br>Marvin E. Aspen |

## JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT

### I. INTRODUCTION

The Court should preliminarily approve the Parties' Settlement Agreement because it is fair, reasonable and adequate under the governing legal standards and provides reasonable monetary compensation to the Class Members. The Parties respectfully request the Court: (1) grant preliminary approval of the proposed Settlement, including the fees and costs payable to Plaintiffs' Counsel; (2) authorize mailing of the class notice in a manner consistent with the Settlement; (3); schedule a final approval hearing; and, (4) enter the [Proposed] Order Certifying Class for Settlement Purposes Only, Granting Preliminary Approval of Class Action Settlement, and Granting Approval of FLSA settlement filed contemporaneously herewith.

### II. BACKGROUND

#### A. The Parties

Defendant MASK RESTAURANTS, LLC is an Illinois corporation doing business as a

restaurant known as TAVERN AT THE PARK located at 130 East Randolph Street, Chicago, Illinois. The two individual Defendants, PETER de CASTRO, JR. and DONNY de CASTRO are its owners. The Named Plaintiffs, JAMES FREBES, MICHAEL ARGEROPOULOS and MARC HOCHMUTH, were employed by Defendants in the state of Illinois during the applicable statute of limitations period.

### B. Procedural History

On May 9, 2013, Named Plaintiffs JAMES FREBES, MICHAEL ARGEROPOULOS and MARC HOCHMUTH filed a class and collective action captioned *Frebes, et al v. Mask Restaurants, et. al., LLC, d/b/a Tavern at the Park*, Case No. 13 cv 3473 in the United States District Court for the Northern District of Illinois. Plaintiffs filed an Amended Complaint on May 14, 2013, and a Second Amended Complaint on October 4, 2013. Plaintiffs alleged that they and other servers, bartenders and bussers whom they sought to represent were required to pay a percentage of their tips to Defendants, who then distributed a portion of those tips to employees who did not regularly receive tips (*i.e.,* "non-tipped employees"), in violation of federal and state wage law. As a result, Plaintiffs allege that they were deprived of minimum wages in violation of the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 201, *et seq.*), the Illinois Wage Payment and Collection Act ("IWPCA") (820 ILCS 115, *et seq.,*) and the Illinois Minimum Wage Law ("IMWL") (820 ILCS § 105, *et seq.*). On or about May 8, 2014, the Court granted plaintiffs' motion for conditional certification under the FLSA. (D.E. 64). Thereafter, 73 individuals timely filed opt-in consent forms to join the FLSA collective action.

Defendants have denied and continue to deny any liability, wrongdoing, or legal violations of any kind related to the claims and contentions asserted by Plaintiffs. They do not admit any liability or wrongdoing and expressly deny the same.

On August 19, 2014, the parties attended a 10-hour mediation overseen by a well-respected private mediator, Judge Stuart Nudelman (Ret.). As a result, the Parties were able to settle their claims. This settlement includes the Named Plaintiffs, 73 FLSA Class Members and 234 IMWL Class Members up to August, 2014.

## C. **Discovery Completed**

The Parties have conducted extensive discovery including: (a) the exchange of Rule 26(a) disclosures; (b) the exchange of written interrogatories; (c); the exchange of tens of thousands of pages of written discovery, including voluminous production of emails and other electronically stored information (ESI); (d) interviews with dozens of witnesses; (e) procuring declarations from 10 witnesses; (f) review and analysis of voluminous time and payroll records identifying dates of employment, hours worked and pay rates; (g) review of Defendants' written policies and procedures. All of this discovery was conducted in conjunction with a comprehensive investigation by counsel on the applicable law as applied to the facts discovered regarding the alleged claims and defenses.

## D. **The Monetary Terms of the Parties' Settlement**

To avoid the time and expense of continued litigation and risks and delays inherent in continuing the litigation, the Parties arrived at settlement in the aggregate amount of $502,233.05. The parties also negotiated terms of an installment plan providing for payments to made as follows, commencing with the date on which the court enters final approval of the Settlement (the "Effective Date"):

> $125,558.27 within 21 days of the Effective Date
>
> $125,558.26 within 133 days of the Effective Date
>
> $125,558.26 within 245 days of the Effective Date
>
> $125,558.26 within 357 days of the Effective Date

The Settlement consists of payment of back wages to FLSA Class Members totaling $193,419.43; payments to IMWL Class Members totaling $114,901.71; additional service payments to the three Named Plaintiffs ($2,500 each) totaling $7,500; fees and costs of the settlement administration activities by the Settlement Administrator totaling $17,680; and payment to Plaintiffs' attorneys for fees and costs in the amount of $160,000.00. The Parties arrived at these amounts through arms-length negotiation based on underlying discovery and data exchanged, as follows:

### i. Payments to Named Plaintiffs and FLSA Class Members

Back wages for FLSA Class Members were computed by multiplying the number of the number of total hours worked by Named Plaintiffs and FLSA Class Members (x) $1.90: 101,799.7 hours x $1.90 = $193,419.43.

### ii. Payments to IMWL Class Members

Back wages for IMWL Class Members were computed by multiplying the number of total hours worked by IMWL Class Members (x) $.63: 182,383.68 hours x $.63 = $114,901.71.

### iii. Additional Service Payments to Named Plaintiffs

The Named Plaintiffs are being paid an additional sum of $2,500 each to compensate them for the time they spent, and risks they undertook, in prosecuting this action on behalf of the other similarly-situated employees, including assisting Class Counsel, responding to written discovery and participating in settlement efforts.

### iv. Plaintiffs' Attorneys' Fees and Costs

The Parties have agreed that Plaintiffs' recovery for attorneys' fees and costs shall not exceed One Hundred Sixty Thousand Dollars ($160,000.00) broken down as follows: $14,464.57 to Class Counsel for their recoverable costs and $145,535.43 for their incurred attorney fees.

4

The Parties agree that these sums are fair and reasonable in light of all the facts and circumstances, including the time spent by Counsel, their hourly rates, the risks undertaken and the results achieved.

### E. **The Procedural Elements of Settlement**

The 76 FLSA Class Members each signed a consent form which provides Named Plaintiffs and Class Counsel with the authority to settle the matter on their behalf. All FLSA Class Members have affirmatively chosen Plaintiffs' Counsel as their attorneys. Thus, consistent with all FLSA collective action settlements, the FLSA Class Members will be notified (and already have been notified) of the settlement directly by Plaintiffs' Counsel, their chosen counsel of record.

With respect to the IMWL Class Members, the Settlement Administrator will mail to each Class Member a *Notice Regarding Proposed Settlement of Class Action For Members of the Settlement Class* (*See* Exhibit A - "Class Notice"), an *Election to Opt Out of Settlement and Class Action Form* (*See* Exhibit B), and a *Change of Name and/or Address Information Form* (*See* Exhibit C). The Class Notice describes the nature of the litigation, the terms of the Settlement, as well as the Class Members' options with regard to participating in the proposed Settlement, objecting to the Settlement, or opting out (*See* Exhibit A). The Settlement Documents will be sent, postage pre-paid, via first class mail to the last-known address of each Class Member. The Settlement Administrator has already made reasonable efforts to obtain valid, current addresses for Class Members, including validating Contact Information through the U.S. Postal Service's National Change of Address database or other third party change of address databases. If any Settlement Documents are returned as undeliverable, the Settlement Administrator will promptly undertake reasonable steps to determine the Class Member's current

address and, if an additional address is located, to send the materials to the additional address.

Class Members will have a deadline of forty five (45) days from initial mailing to object to the Settlement, or opt out (*See* Exhibit A ).

Class Members do not need to do anything to participate in the settlement. *Id.*

All Class Members who do not opt out of the Settlement will be deemed members of the IMWL Settlement Class and subject to this Court's judgment and, once the judgment becomes final, be deemed to have released, and to have covenanted and agreed not to file, prosecute, participate in, authorize, or cooperate in the filing or prosecution of any action or proceeding on the basis of any claims arising out of the IMWL and IWPCA, from the beginning of time until the date of the execution of this Agreement.

Finally, the Settlement provides for a final approval hearing on the fairness and adequacy of the proposed Settlement, on Class Counsel's request for attorneys' fees and litigation expenses, the administration costs, and the service payments to the Class Representatives. The Class Notice will advise Class Members of the final approval hearing and their right to object to the Settlement. At the final approval hearing, the parties will address any issues raised by Class Members, and the Court will have a second opportunity to review the Settlement before deciding whether to issue final approval.

Once this Court has ruled on the motion for preliminary approval, the deadlines for providing notice, opting out of the Settlement and submitting objections or comments to the proposed Settlement will begin to run. The schedule set forth below, which is subject to the timing of actions to be taken by the Parties and the Court in this case, provides the Court with an approximate timeline of the various steps in the settlement approval process under the Settlement.

| | Event | Timing |
|---|---|---|
| 1. | Motion for Preliminary Approval Filed | October 10, 2014 |
| 2. | Hearing on Motion for Preliminary Approval | October 23, 2014 |
| 3. | Parties to Provide Class List with Addresses to Claims Administrator | Within 7 Days After Preliminary Approval |
| 4. | Deadline for Opting Out or Objecting to Settlement | 45 Days After the Issuance of Notice by the Settlement Administrator |
| 5. | Final Approval Fairness Hearing | Approximately 60 Days After Preliminary Approval |
| 6. | Defendant to Fund the QSF | $123,500 within 21 days after entry of Final Judgment<br><br>$123,500 within 133 days after entry of Final Judgment<br><br>$123,500 within 245 days after entry of Final Judgment<br><br>$123,500 within 357 days after entry of Final Judgment |
| 7. | Settlement Administrator to Distribute Funds to Class Members and Plaintiffs' Counsel | Within 364 days after entry of Final Judgment |

## III. LEGAL AUTHORITY

### A. The Court Should Approve The Settlement Of Plaintiffs' State Law Claims Under F.R.C.P. 23(e) Because It Is Fair, Reasonable And Adequate.

Under Fed. R. Civ. P. 23(e), class claims may be settled only with court approval. During the preliminary approval stage, the district court decides whether the proposed settlement falls "within the range of possible approval." *Cook v. McCarron*, 1997 WL 47448, at *7 (N.D. Ill. 1997) (citation omitted); *Manual for Complex Litigation, Third,* § 30.41, p. 237 (1995). If so, the court should grant preliminary approval of the settlement, authorize the parties to give notice of the proposed Settlement to Class Members, and schedule a formal fairness hearing. *Id.*; *Gautreaux v. Pierce,* 690 F.2d 616, 621 (7th Cir. 1982). Settlements that are reached as a result

of arm's-length bargaining between experienced and well-informed counsel are entitled to a presumption of fairness. *Manual for Complex Litigation, Third*, § 30.42, p. 240; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

Here, the Parties' Settlement is fair, reasonable and adequate under the governing multi-factor test:

(1)  The settlement is fair, reasonable and adequate given the merits of the case weighed against the settlement terms.  The settlement provides monetary recovery to the Class Members for the full statutory period of potential liability without the risks inherent in continuing what would prove to be lengthy litigation and the possibility that Defendants would prevail on their arguments that no non-tipped employees participated in the tip-pool, only did so for limited periods and/or did so without Defendants' knowledge.   Defendants asserted a number of meritorious defenses, including that their tip pool was administered with the advice of experienced counsel.

(2)  The settlement is fair, reasonable and adequate given the financial condition of Defendants.  With respect to the financing of this settlement, Defendants are self-insured.  The corporate Defendant is a small, privately-held, family-owned business that owns a single restaurant.  The two individual owners do not possess great wealth, and their individual liability is in serious dispute.  When negotiating the settlement amounts and payment plan, Plaintiffs' Counsel took into account the financial condition and ability of Defendants to pay even assuming they were ultimately able to secure a judgment against them.  To secure full and timely payment under the installment plan, Plaintiffs' Counsel negotiated a term whereby Defendants agree to confess judgment against each of them, jointly and severally, for the full amount of any unpaid balance that is due and owing as of the date of a default.  Defendants further agree to waive

service of process in connection with any action to obtain the confession of judgment, and Defendants agree to pay Plaintiffs' reasonable attorneys' fees and costs incurred in connection with securing the confession and collecting any unpaid balance. Plaintiffs' Counsel is satisfied that Defendants have provided reasonably sufficient and adequate assurances that they will comply with all monetary terms of the settlement.

(3) The settlement is fair, reasonable, and adequate given the complexity and expense of further litigation because the Parties agree that the cost of fully litigating this action could equal or exceed the value of the claims at issue (which amount is being paid under the settlement). The attorneys' fees portion of the settlement is reasonable given the results obtained, the hours spent, and the hourly rates previously approved by this Court.

(4) The settlement is fair, reasonable and adequate given the potential for opposition to the settlement. Because the IMWL Class Members who will now receive substantial monetary compensation previously declined to participate in the FLSA collective action, notwithstanding actual notice and an opportunity to join, there should be little or no opposition.

In sum, the settlement is within the range of reasonableness in light of the best possible recovery. Further, the Parties have agreed to a claims process that is more than reasonable and allows individuals to object or opt out. The parties are retaining an experienced settlement administrator to handle the process and will use reasonable efforts to locate class members. For all of these reasons, the Court should preliminarily approve the settlement of the IMWL Class under Rule 23(e).

A.      **The Court Should Also Approve The Settlement Of Plaintiffs' FLSA Claim Because The Settlement Is Fair And Reasonable.**

Settlements of FLSA claims must be approved by a Court of competent jurisdiction. *See, e.g., Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's*

*Food Stores, Inc. v. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 7, 2001). An employee may compromise a claim under the FLSA pursuant to a court-authorized settlement of an action alleging a violation of the FLSA. *E.g. Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). With respect to a court-authorized settlement, the court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* If a settlement in an employee FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

In determining whether a settlement is fair and reasonable, courts have considered non-exclusive factors such as: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation." *Butler v. American Cable & Telephone, LLC*, 2011 WL 4729789, at *9, fn. 9 (N.D.Ill. Oct. 6, 2011).

The Parties' settlement is fair and reasonable and meets all of the factors considered by courts. The settlement appropriately factored in the complexity, risk, expense, and likely duration of the litigation. The Parties recognized the dollar value exposure for back wages based on Plaintiffs' allegations that funds were improperly distributed from Defendants' tip pool to

employees who are not legally permitted to share tips. Plaintiffs also recognized the risks inherent in proceeding with the litigation in light of Defendants' arguments not only on the merits of the claim, but on the ability to maintain this action is a fully-certified collective action. All parties recognized that had the case not settled, the litigation, trial and possible appeals could have easily consumed many years of contentious and costly litigation. The overall reaction of the FLSA class members to the settlement has been positive.

Moreover, the settlement was appropriate at this stage of the proceedings and given the amount of discovery completed. Aside from Plaintiffs' extensive independent investigation, which included interviews with dozens of witnesses and procuring declarations from 10 witnesses, the parties exchanged Rule 26(a) disclosures; written interrogatories; tens of thousands of pages of written discovery, including voluminous production of Defendants' written policies and procedures, emails and other electronically stored information (ESI). Defendants also produced – and Plaintiffs' counsel reviewed and analyzed – voluminous time and payroll records identifying dates of employment, hours worked and pay rates for each class member to calculate individualized damages using computer formulas and Excel spreadsheets. The Parties thus had all of the information necessary to assess the viability of Defendants' tip-pool during the relevant time period, as well as the possible exposure for back pay.

Additionally, the settlement is well-within the range of possible recovery. As in all wage and hour claims, the nature and amount of recoverable damages was uncertain. Even if a trier of fact ultimately found liability, which was far from certain, a wide range of possible damages existed depending on factors including, but not limited to, the amount of time and frequency in which non-tipped employees were proven to have participated in the tip pool, Defendants' knowledge, willfulness and good faith. Plaintiffs also took into account the ability of Defendants

– who are a small, privately-held entity – to withstand a larger judgment even if one was ultimately secured.

Finally, the Attorneys for the Parties, who are highly-experienced in wage and hour collective and class actions, along with a well-respected private mediator, believe that settlement is fair and reasonable.

For all of these reasons, the Parties jointly request the Court to preliminarily approve the Settlement Agreement.

### III. THE TERMS OF THE PROPOSED SETTLEMENT

The terms of the Settlement are contained in the Class Action Settlement Agreement, filed herewith. There are no undisclosed side agreements between the Named Plaintiffs and Defendants. *See* Exhibit D - Declaration of James B. Zouras.

Defendants have agreed to pay the gross sum total of $502,233.05 to satisfy: (1) all approved attorneys' fees and costs in connection with all of Class Counsel's representation of Named Plaintiffs and the members of the collective and class actions, including all attorneys' fees and costs that may arise in the future in connection with this Settlement Agreement, including, without limitation, seeking Court approval of the Settlement Agreement, and the notice process; (2) all fees and costs of the settlement administration activities by the Settlement Administrator; (3) all Settlement Payments); and (4) service payments to the Named Plaintiffs. *See* Exhibit E – Class Action Settlement Agreement. The Settlement Payment is non-reversionary. The only funds that would revert to the Defendants are the settlement amounts of class members who opt-out of the settlement or who do not cash their checks within 120 days.

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A. The Legal Standards for Court Approval of Class Action Settlements

The dismissal or compromise of any class action requires the court's approval. FED. R. CIV. P. 23(e). The approval of any proposed class action settlement is typically exercised in the two-step process of "preliminary" and "final" approval. MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 236 (1995). Although the legal standards for preliminary and final approval overlap, preliminary approval requires only a threshold finding that the settlement could be approved as fair and adequate after notice to the class.

In the first step, the court makes a preliminary determination as to whether the settlement falls "within the range of possible approval." *Cook v. McCarron*, 1997 WL 47448, at *7 (N.D. Ill. 1997) (citation omitted); Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.25 (3d ed. 1993) ("NEWBERG"). "The purpose of the initial hearing is to ascertain whether there is any reason to notify the class members of the proposed settlement and proceed with a fairness hearing." *Id.* Once the settlement is found to be "within the range of possible approval" at the initial fairness hearing, the final approval hearing is scheduled and notice is provided to the class. *Id.*

The second step of the approval process is the final determination, following a hearing at which time any objections by class members may be considered. The court then determines whether the settlement is fair, reasonable and adequate from the standpoint of the Class. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); NEWBERG, § 11.41. Courts consistently favor settlements of disputed claims. *E.g., Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("the law strongly favors settlements ... [and][c]ourts should hospitably receive them.") "There is usually an initial presumption of fairness when a proposed

class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." NEWBERG, §11.41 at 11-88; *Hispanics United of DuPage County v. Village of Addison, Ill.*, 988 F.Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Little Rock Sch. Dist.*, 921 F.2d at 1391 (same). Indeed, when experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). In contrast, "judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (citation omitted); *Grove v. Principal Mutual Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001).

As stated, the standard for granting preliminary approval of the proposed settlement is a determination of whether the proposed settlement is "within the range of possible approval." *Cook v. McCarron*, 1997 WL 47448, at *7 (N.D. Ill. 1997) (citation omitted); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). The purpose of the preliminary approval process is for the court to ascertain whether reason exists to proceed by notifying the class members of the settlement and to hold a fairness hearing. *Horton*, 855 F. Supp. at 827. In considering whether to grant a motion of preliminary approval of a proposed settlement agreement, the court utilizes a "threshold inquiry" intended merely to realize conspicuous defects. *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 337-38 (N.D. Ohio 2001). Thus, preliminary approval is appropriate:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval ... .

MANUAL FOR COMPLEX LITIGATION §30.41 at 265 (3d ed. 2000). Unless the court's initial

examination "discloses[s] grounds to doubt its fairness or other obvious deficiencies," the court should order that notice of a formal fairness hearing be given to Class Members under Rule 23(e). *Id.* Considering the issues, evidence and nature of the settlement negotiations, preliminary approval is proper in this case.

## B. The Settlement Meets the Standards for Preliminary Approval

A court generally will preliminarily approve a proposed class settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). In making such a determination, courts consider the following factors: (1) the strength of the plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel*, 463 F.3d at 653; *Isby*, 75 F.3d at 1199. Further, a court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199. Finally, as detailed below, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County*, 988 F. Supp. at 1149 n.6.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and meets the standard for preliminary approval.

## 1. Strength of Plaintiffs' Case as Compared to the Terms of the Proposed Settlement

One of the key considerations in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendant's offer. *Isby*, 75 F.3d at 1199. Courts, however, "have been admonished 'to refrain from resolving the merits of the controversy of making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram*

*Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, when deciding whether to preliminarily approve the Settlement, this Court must focus on general principles of fairness and reasonableness but not the substantive law governing the plaintiffs' claims. *Id.*

The outcome of this litigation is far from certain. When the Parties agreed to settle, Class Counsel generally believed that many aspects of this case were strong, but that there was a clear risk that, despite the strength of the Named Plaintiffs' and Class Members' claims, the class action is not guaranteed to prevail at trial. Even some of the stronger aspects of the case were subject to ultimate rejection, in whole or in part. Bona fide disputes exist as to whether Named Plaintiffs and the Class Members could credibly establish that non-tipped employees were consistently and knowingly included in Defendants' tip pool, and whether Defendants acted in good faith reliance on legal advice, and consequently, whether Defendants were liable for any amount of back minimum wages. Thus, as in any complex action, the Named Plaintiffs and Class Members generally faced uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

Determining a "reasonable" settlement amount is never simply a mathematical calculation that yields a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement ... ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). This case is no different in that there was a range of potential settlements that would have been reasonable.

The Settlement, though not providing a maximum value that might be awarded at trial at a later date, provides substantial monetary benefits now, without the time, difficulties, expense, and uncertainty of further litigation and without the years of delay any appeal might cause. *See*

16

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker & Sons*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

The proposed Settlement thus ensures that the Class Members will receive significant monetary relief and, for all practical purposes, means that those Class Members who do not opt-out will receive a settlement amount that is reasonable and consistent with the established facts as applied to the governing law,

"District courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 179, 181 (2d Cir. 1987) (internal quotes and citation omitted). The allocation of a settlement fund among competing claimants is one of the court's traditional equitable functions. *Curtiss-Wright Corporation v. Helfand*, 687 F.2d 171, 174 (7th Cir. 1982). In exercising its equitable power, a court has the discretion to favor those class members who have relatively stronger legal claims. *See Equity Funding Corp. of America Securities Litigation*, 603 F.2d 1353, 1366-67 (9th Cir. 1979) (upholding a plan of allocation in which those class members with stronger claims received more than those with weaker claims).

In determining the allocation, the parties considered, among other things, the possibility that a class may not be certified or maintained through trial under Rule 23, the applicable minimum wage rate, class members' hours of employment, the information obtained via discovery, the possibility for liquidated and other damages under the FLSA and IMWL.

### 2. Complexity, Length and Expense of Further Litigation

Avoiding the delay and risk of protracted litigation is another reason why counsel

frequently recommends, and the courts approve, settlements. *See, e.g.*, *Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (judge must consider "the complexity, expense, and likely duration" of the litigation); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). This consideration applies to this case.

Further litigation would require extensive discovery, including at least 20 depositions, further motion practice and the risk, time, and expense associated with trial. These costs of further litigation are considerable in terms of both time and money with uncertain results.

Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976).

### 3. There is No Opposition to the Settlement

The Named Plaintiffs support the settlement, as do Plaintiffs' counsel and Defendants and their counsel. At this preliminary stage, Plaintiffs' counsel is unaware of any opposition to the settlement. *See* Exhibit D. Indeed, the reaction of class members has been universally positive.

### 4. Opinion of Counsel

The proposed Settlement is the product of arm's-length, non-collusive negotiations conducted by counsel experienced in class actions, particularly wage and hour class actions of this kind, and who are intimately familiar with the strengths and weaknesses of the claims and defenses. Using that litigation experience, counsel were capable of making, and did make, well informed judgments about the adequacy of the Settlements reached. *Id.*

Counsel exercised that experience and their intimate knowledge of the facts of the case

18

and the legal issues facing the Named Plaintiffs and Class Members to conduct an independent analysis of the strengths, weaknesses, and value of the claims, and the time, costs and expense of protracted litigation, discovery, and appeals.

### 5. The Stage of Proceedings and Discovery Completed

As explained above, this complex class action was resolved approximately 1½ years after it was initiated. This period involved extensive research, analysis, investigation, protracted written discovery, dispositive motion practice, and FLSA conditional certification practice, amongst other things. The stage of litigation has advanced to a state that Plaintiffs' counsel could fairly and fully evaluate the value of the settlement. *Id.*

### 6. The Settlement was the Result of Arm's Length Negotiations, Without Any Hint of Collusion

There is plainly no collusion or fraud with respect to this proposed Settlement, which was reached after several failed settlement conferences and after intense negotiation with the dedicated assistance and oversight of a well-respected private mediator, Judge Stuart Nudelman (Ret.). As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.

>    *   *   *

The initial presumption of fairness of a class settlement may be established by showing:

  a.  That the settlement has been arrived at by arm's-length bargaining;

  b.  That sufficient discovery has been taken or investigation completed to enable counsel and the Court to act intelligently; and,

  c.  That the proponents of the settlement are counsel experienced in similar litigation.

Newberg §11.41 at 11-88, 11-91; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100

F.3d 1041, 1043 (1st Cir. 1996). In this case, as explained above, the terms of the Settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery, analysis and motion practice. Therefore, this Court should find that an initial presumption of fairness exists to support preliminary approval of the Settlement.

In sum, the foregoing demonstrates that the proposed settlement is fair and reasonable. Moreover, for purposes of preliminary approval, these factors establish that the proposed settlement is "within the range of possible approval," and should be submitted to class members for their consideration. *Horton*, 855 F. Supp. at 827. While the Parties believe the Settlement merits final approval, the Court need not make that determination at this time. The Court is being asked only to permit notice of the terms of the Settlement to be sent to the Class and to schedule a hearing, under Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members of the fairness of the Settlement and the Plan of Distribution, the benefits to be received by Class Members, and Plaintiff's counsel's request for an award of attorneys' fees and expenses. *See* 5 James Wm. Moore, Moore's Federal Practice ¶ 23.80[1], at 23-336 (3d ed. 2001).

## V.     PLAINTIFFS' COUNSEL REQUESTS PRELIMINARY APPROVAL OF REASONABLE FEES AND COSTS OF $160,000.

In the Seventh Circuit, the favored approach to awarding reasonable attorneys' fees in class litigation is as a percentage of the common fund. *See Matter of Continental Illinois Securities Litigation*, 962 F.2d 566, 572-74 (7th Cir. 1992) ("*Continental Illinois I*"), later proceeding, 985 F.2d 867 (7th Cir. 1993) ("*Continental Illinois II*"). To determine what percentage of the fund should be awarded, the district court looks to the market price for legal services, which has traditionally ranged from $33^1/_3$% to 40% in comparable litigation. *See Teamsters Local Union No. 604 v. Inter-Rail Transport, Inc.*, 2004 WL 768658, *1 (S.D. Ill.

2004).

Accordingly, Plaintiffs' counsel requests that the Court grant preliminary approval of an award of $145,535.43 which represents approximately 29% of the Gross Settlement Amount plus costs of $14,464.57.

## A. The Percentage of the Fund Method is the Preferred Approach to Awarding Attorneys' Fees in Common Fund Cases

Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common fund doctrine "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (*citing Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988).

The Seventh Circuit has authorized district courts to employ the percentage method to determine an appropriate fee award in common fund cases. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). In deciding fee levels in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) *citing In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases); *see also In re Synthroid Mktg. Litig.*, 264 F.3d at 717-18 (reversing district court's award failure to apply "market-based approach" to approving attorney's fees); *Sutton v. Bernard*, 504 F.3d 688, 693-94 (7th Cir. 2007) (reversing district court decision for failure to consult the marketplace in determining attorneys' fees). Under the market-based approach, "class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*,

2001 WL 1568856, *4 (N.D.Ill. 2001).

In wage and hour litigation – like this case – fee awards of one-third are traditional in common fund cases. *Id.*, *See Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752 (N.D. Ill) (Dkt. #78) (awarding one-third of common find in IMWL minimum wage and overtime pay case); *Perry v. National City Bank*, Case No. 05 C 891 DRH (S.D. Ill.) (awarding 33% of $27,500,000 common fund in overtime case).[1] Here, where the requested fee award is less than 33% of the Settlement Amount, Plaintiffs' Counsel's request is eminently reasonable.

## B. The Results and the Benefit Conferred Upon the Class Justify the Requested Award

The proposed Settlement brings substantial value to 310 employees, who will share in the $308,820 Settlement Amount in a manner that is proportionate to the number of hours they worked for Defendants. The fact of a significant monetary recovery without the uncertainty or risks of trial and appeals qualifies this Settlement as an outstanding result.

Furthermore, none of the FLSA or IMWL Class Members are required to sign general releases in order to receive funds under the Settlement. Thus, any claim a Class Member may have, other than those which were or could have been asserted in the Class Action Litigation remains unaffected. The absence of a general release exemplifies the results achieved for the Class. *See Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999)

---

[1] *See also* the following cases from the Northern District of Illinois and the Chancery Court of the Circuit Court of Cook County: *Acosta, et al. vs. Scott Labor, et al.*, Case No. 05 C 2518, Dkt. # 120 (awarding 33 1/3% of common fund in overtime case); *Sanchez v. Stampede Meat, Inc.*, Case No 02 C 5452 (Dkt. # 70) (awarding 33 1/3% of common fund in overtime case); *Gonzalez v. Labor Network*, Case No. 05 C 4864 (Dkt. # 137) (awarding 33 1/3% of common fund in overtime case); *Flores v. Jorge Arteaga Corp.*, Case No. 05 C 2057, Dkt. # 53 (awarding one third of common fund in minimum wage and overtime case); *Kim v. CHT Corp.*, Case No. 03 C 7362, Dkt. # 23 (awarding Plaintiffs' Counsel's requested 27.5% of common fund in minimum wage and overtime case); *Ortegon v. Staffing Network, Inc.*, Case No. 06 CH 12679, Order dated July 24, 2009, (awarding 33 1/3% of common fund in IDTLSA and overtime case); *Arrez v. Kelly Services, Inc.*, N.D. Ill., Case No. 07 C 1289 (N.D. Ill.), Dkt. # 176 (in IWPCA class action for owed wages, awarding requested 30% of $11,000,000 common fund); *Perezchica, et al. vs. Eastco International Corp., et al*, Case No. 07 CH 04726, Order dated March 18, 2008 (awarding 33 1/3% of common fund in overtime case); *Polk v. Adecco*, Case No. Case No. 06 CH 13405, Order Dated November 15, 2010 (awarding requested 30% of $1,200,000 settlement fund).

(noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Named Plaintiffs respectfully request that the Court:

    a. Preliminarily approve the Settlement, including the fees and costs payable to Plaintiffs' Counsel, subject only to the objections of Class Members and final review by the Court;

    b. Approve as to form and content the proposed Notice Regarding Proposed Settlement of Class Action for Members of the Settlement Class;

    c. Approve as to form and content the proposed Election to Opt Out of Settlement and Class Action Form and Change of Name and/or Address Information Form;

    d. Direct the mailing of the Notice Regarding Proposed Settlement of Class Action for Members of the Settlement Class, Election to Opt Out of Settlement and Class Action Form and Change of Name and/or Address Information Form by first class mail to the Settlement Class Members; and,

    e. Schedule a fairness hearing on the question of whether the proposed settlement, including without limitation payment of attorneys' fees and costs, and the incentive award, should be finally approved as fair, reasonable, and adequate as to the Members of the Settlement Class.

Dated: October 10, 2014

*/s/ James B. Zouras*
James B. Zouras
Ryan F. Stephan
Andrew C. Ficzko
Stephan Zouras, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601
Telephone: (312) 233-1550

**ATTORNEYS FOR PLAINTIFFS**

*/s/ James Hiller*

James B. Hiller
Brian Roth
Gordon & Rees LLP
One North Franklin Street
Suite 800
Chicago, Illinois 60606
Telephone: (312) 565-1400

**ATTORNEYS FOR DEFENDANTS**